HENEGAR *v.* SEYMOUR.

(*Knoxville.*    October 31, 1893.)

1. BOUNDARY.    *Between the Hiwassee and Ocoee Districts.*

The Court determines, upon the facts stated in the opinion, that there is not a strip or "gore" of vacant, unsectionized land between the Hiwassee and Ocoee Land Districts.

2. EVIDENCE.    *Preponderance of.*

In ejectment for a strip of land claimed by the plaintiff to have been left unsurveyed and unsectionized, evidence in support of plaintiff's theory by a surveyor of only five years' experience, and none in the mountains of East Tennessee, who is shown to have made numerous mistakes in the survey, which is controverted by four experienced surveyors of many years' practice, does not warrant a judgment for plaintiff, where a part of the land has been in defendant's possession, under inclosure and in cultivation for over forty years, and other portions for more than seven years, and it was the evident purpose of the Legislature to sectionize all the lands in the district, and abutting land-owners recognized that no strip was left unsurveyed.

---

FROM POLK.

---

Appeal from Chancery Court of Polk County. T. M. McCONNELL, Ch.

T. E. H. McCROSKEY for Henegar.

CHARLES SEYMOUR for Seymour.

WILKES, J.    This is an action of ejectment to recover a tract of land alleged to be located in Monroe and Polk Counties.

Complainants claim as the heirs of Francis W. Lea, who, in his life-time, July 7, 1858, obtained a grant for it from the State of Tennessee.

On the trial of the cause in the Court below, the Chancellor held that complainants had failed to sustain the allegations of their bill, and dismissed the same, and they have appealed and assigned as error the finding of the Chancellor against their contention.

The facts of the case, so far as they need to be stated, are as follows: Prior to 1819 the United States Government bought of the Cherokee Indians all their claim to the lands embraced in what was known as the Hiwassee Land District, having previously ceded the same to the State of Tennessee, subject to this Indian claim. After this purchase was made, the State of Tennessee appointed Commissioners to lay off the district into ranges, townships, sections, and fractions of sections. In June, 1819, some disagreement having arisen with the Indians in regard to the boundary line of the district, R. Houston and James McIntosh, on the part of the United States, and "Squire" and "Crow," on the part of the Cherokee tribe of Indians, were appointed Commissioners to resurvey and remark the line, which they proceeded to do, and on June 12, 1819, they agreed upon and signed their report at the forks of the Nautagulee and Cowee Rivers.

The Cherokees owned a section of country adjoining the Hiwassee purchase, lying south and

east of it, which became known as the Ocoee District. This was also purchased at a later date, and in 1836 the State of Tennessee directed a survey of this district into ranges, townships, sections, and fractions of sections.

The line between the two districts ran in a direction north 18° west from the beginning corner on the bank of the Hiwassee River, and the township lines were intended to close upon it, but could not do so, at right-angles, and the consequence was a great number of fractional sections and quarters were formed.

Maps and surveys were filed in each district showing the township, sections, and fractional divisions and lines, but the lengths of the fractional lines abutting on the boundary line were not given, but only the fractional areas.

On February 25, 1854, the State of Tennessee passed an Act authorizing the entry and grant of all unsurveyed lands in the Ocoee District, and in 1859 Francis W. Lea. obtained a grant under this Act for 8,270 acres of land. Complainants claim as his heirs, and their contention is that there is a strip of unsurveyed land lying between the Hiwassee and Ocoee Districts on the Ocoee side of the Indian boundary line.

Defendants also hold under a chain of title from the State of Tennessee by numerous grants. Their contention is that there is no unsurveyed or vacant unsectionized lands between the two districts, but that the lines of the sections and fractional sec-

tions of surveyed lands in the two districts approach each other until they meet upon a common line, which is the original boundary line of 1819, and, second, that as to a large portion of the land embraced in complainants' grant, the grant is void, because the land was, at the time the grant was issued, in the actual adverse possession and occupation of defendants and their predecessors under older grants.

Complainants caused the lines called for by their grant to be run out by actual survey, using in making the survey not only the calls in complainants' grant, but also the calls of the fractional sections abutting on the district lines on both the Hiwassee and Ocoee sides, as obtained from their respective land-offices, and upon completing such survey the surveyor came to the conclusion that there was an area of 3,610 acres of land not covered by defendants' title, or any other, and not sectionized, but laying like a gore between the two districts, and it is this strip or gore which complainants claim, disclaiming all right to any land covered by the calls of defendants' title-papers, or lying in the sectionized portion of the Ocoee District, and disclaiming all right to any lands in the Hiwassee District.

It will thus be seen that the controversy narrows itself down to the question whether there is any vacant or unsectionized lands in the Ocoee District abutting on this Indian boundary line.

Defendants have also caused surveys to be made

of the locality, and various tests to be applied, and the contention of each party is liberally illustrated by handsome maps covering all the territory and fully sustaining the opposite contentions, and in each case showing the utter impossibility of the correctness of the opposing theory from the stand-point taken. The accuracy and competency of the surveyors is called in question. It is said that the defendants' surveyors are not experts, that they did not locate the Indian boundary line, nor attempt to do so, and that their testimony and conclusion is based upon the laws fixing the boundaries of the two districts rather than upon any actual surveys and personal observations.

On the other hand, it is shown that complainants' surveyor is incompetent; that he has had an experience of only five years in Georgia, and none in the mountains of East Tennessee; that he guessed at his beginning corner, and in attempting to follow the Indian boundary line of 1819 he placed the variation of the compass needle on the wrong side of the meridian line; that he professed to find land-marks of the old line run in 1819 upon trees in a locality where it is shown the forest trees had been cleared away and the land cultivated for more than twenty years, and which had since been covered with a second or undergrowth for thirty years; that he also professed to find marked trees in other localities where it appeared the land had been cleared and in cultivation for forty years.

17—9 P

Upon an inspection of the title-papers of the contesting parties, and a comparison of their maps, and the statements of the surveyors explaining the same, we are of opinion that complainants have failed to show satisfactorily that there is any vacant or unsectionized lands in the Ocoee District, bordering on this Indian line between the two districts covered by their grant.

The testimony of Thomas, their surveyor, is wholly overthrown by that of Waring, Muller, Deakins, and McGuffey, the surveyors of defendants.

These latter gentlemen appear to be competent, intelligent, experienced surveyors and engineers of many years' standing and practice in their profession, with much experience in surveying mountain and other lands in the locality, and in locating old lines, including this Indian boundary line, which had been located by them in many places in the native forests, after reaching Starr's Mountain. Each of these surveyors states that from actual measurement and personal observations and experiments with various fractional and sectional lines, it is impossible that there should be a vacant gore or strip between the two districts. They explain that, while there is an apparent shortage in some of the fractional lines, and that others are too long, so as to cause at some places an interlap of the lines from the two districts, there is no discrepancy of any consequence at any place, and no more than would naturally, and does usu-

ally, result in surveys over rough mountains, and especially in the early history and settlement of the country. That, while there is some confusion between lines and boundaries, caused by the hasty and careless manner in which early surveys were made, there is no such discrepancy as cannot be cured and explained by the rules observed in establishing calls for old lines and natural objects; that the greatest difference observed did not exceed forty poles in a line six miles in length, over very rough, mountainous grounds, while in other cases there were some lines that fell short small amounts.

It also appears that a part of the land covered by complainants' title-papers has been in defendants possession, under inclosure and in cultivation, for over forty years, and other portions for more than seven years, constituting what is known as the "Savannah farm," which lies partly in each district, crossing the Indian boundary line, and lying on both sides of the Hiwassee River.

The principal conflict seems to arise between a grant to Chas. Seymore for 4,000 acres, made in 1874, and the calls of complainants' grant. Seymore, soon after obtaining his grant, conveyed the land to defendants, and they have been holding the same adversely and in actual possession ever since, as to considerable portions of the area embraced.

In view of the evident purpose of the Legislature to sectionize all the lands in each of these districts up to the Indian boundary line, and the surveys and plats to carry this purpose into effect,

as manifested in the surveys and plats in the land-offices of the two districts, and in view of the recognition by abutting land-owners that they hold up to a common dividing line, and that there is no hiatus or gore left unsurveyed and unsectionized, we would not be disposed to adjudge that there was an unoccupied and vacant strip of land along the Indian boundary line, which extends across the State, as the dividing line between the two districts, unless the evidence was very plain and convincing.

The Act of 1854, under which this grant was obtained, is, at most, only a legislative recognition that there may be lands left vacant in the Ocoee District, but not an adjudication that there are such vacant or unsectionized lands.

Upon a careful examination of the entire case, we are convinced that complainants have failed to sustain their contention that there is a vacant gore of land between the two districts, a portion of which is covered by their grant, and the judgment of the Court below is affirmed with costs, and the bill dismissed.